**Date Signed:
February 23, 2022**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>ROLANDO MANGSAT TIRSO AND KAMEHALYN SANTOS TIRSO,<br><br>　　　　　　　　　　Debtors. | Case No. 11-01873 (RJF)<br>Chapter 7 |
| DANE S. FIELD, Chapter 7 Trustee,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　　　　　　Defendants. | Adv. Pro. No. 20-90021<br><br>Dkt. 42, 52, 54 |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this adversary proceeding, the trustee contends that defendant Bank of America, N.A. ("BANA") improperly foreclosed a mortgage on the debtor's property. Under Hawai'i law, borrower-plaintiffs in wrongful foreclosure cases like this one must account for their outstanding mortgage debt at the time of foreclosure when calculating their damages. Defendant Bank of America, N.A. seeks summary judgment, arguing that the trustee cannot prove damages. BANA also argues that some of the trustee's claims are time-barred. I agree with BANA and will GRANT its motion.

I. BACKGROUND

In December 2006, Rolando Mangsat Tirso and Kamehalyn Santos Tirso purchased property located in Kapolei, Hawaii.[1] This purchase was entirely financed by two mortgages – the first in the amount of $272,200.00 and the second in the amount of $61,800.00.[2] Mortgage Electronic Registration Systems, Inc., held the first mortgage as nominee for First Magnus Financial Corporation.[3] BANA eventually acquired the first

---

[1] Compl. ¶ 14, ECF No. 1.
[2] Statement of Undisputed Material Facts, ¶ 4-5, ECF No. 42.
[3] *Id.*

mortgage,[4] but not the second mortgage.[5] Mr. and Mrs. Tirso began missing payments in March 2009, and BANA initiated a non-judicial foreclosure.[6] In 2010, BANA made the only bid at the foreclosure auction for approximately $261,459.00.[7] BANA then conveyed the property to Federal Home Loan Mortgage Company ("Freddie Mac") which then conveyed the property to third parties.[8]

At the time of the foreclosure auction, the Tirsos' outstanding debt on their first mortgage was approximately $265,281.22. BANA did not seek a deficiency judgment against the Tirsos. The servicer of the second mortgage did seek a deficiency judgment.

In 2011, the debtors filed a chapter 7 bankruptcy petition and obtained a discharge.[9]

The Tirsos were allegedly members of the proposed plaintiff class in a putative class action entitled *Degamo v. Bank of America, N.A.*, filed in state

---

[4] *Id.* at ¶¶ 3, 6.
[5] *Id.* at ¶ 11.
[6] *Id.* at ¶ 14.
[7] *Id.* at ¶¶ 20, 26.
[8] Compl. ¶¶ 37, 40, ECF No. 1.
[9] Final Decree, ECF No. 25 in main bankruptcy case; Discharge of Debtors, ECF No. 24 in main bankruptcy case.

court on September 7, 2012[10] and later removed to federal district court.[11] The plaintiffs in *Degamo* asserted claims against BANA arising out of numerous allegedly wrongful foreclosures.[12] That case was dismissed with prejudice on March 14, 2019, because the named plaintiffs lacked prudential standing as a result of prior bankruptcy filings.[13]

The trustee filed the complaint in this adversary proceeding on October 1, 2020, alleging wrongful deprivation of real property and unfair and deceptive trade practices and unfair methods of competition.[14]

BANA now moves for summary judgment on both counts, arguing that the trustee is unable to establish the element of damages.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment when "the movant shows that there is no

---

[10] Compl. ¶ 12-13, ECF No. 1.
[11] Defendant's Notice of Removal, *Degamo v. Bank of Am., N.A.*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Mar. 25, 2013), ECF No. 1.
[12] First Am. Compl. ¶ 46, *Degamo*, No. 1:13-cv-00141-JAO-KJM (D. Haw. Apr. 23, 2013), ECF No. 14.
[13] Order Denying Pls' Mot. Accept Ratification or Permit Substitution and Renewed Mot. for Leave to File Second Am. Compl., *Degamo*, No. 1:13-cv-00141-JAO-KJM, 2019 U.S. Dist. LEXIS 41608, at *23 (D. Haw. Haw. 14, 2019), ECF No. 147.
[14] Compl. ¶¶ 50, 71, ECF No. 1.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] Moreover, when a non-moving plaintiff fails to establish an element essential to their case, summary judgment in favor of the movant is proper.[16] In such a case, there is no genuine issue concerning any material fact "since a complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial."[17]

## III. DISCUSSION

### A. **Wrongful Foreclosure Damages after *Lima***

To establish a prima facie case of wrongful foreclosure, a plaintiff must establish (1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages.[18] To establish a prima facie case for a UDAP claim, a plaintiff must establish (1) that the

---

[15] Fed. R. Civ. P. 56(a); *See Lima v. Deutsche Bank National Trust Co.*, 2021 WL 4722949 at *5 (D. Haw. Oct. 8, 2021) (internal citations omitted).
[16] *See Lima v. Deutsche Bank National Trust Co.*, 494 P.3d 1190, 1197 (Haw. 2021) (quoting *Exotics Hawaii-Kona, Inc. v. E.I. du Pont de Nemours & Co.*, 172 P.3d 1021, 1046 (Haw. 2007)).
[17] *Id.*
[18] *Lima*, 494 P.3d at 1197 (Haw. 2021) (internal citations omitted).

defendant violated the UDAP statute (or another statute that incorporates the UDAP statute); (2) that the consumer was injured as a result of the UDAP violation; and (3) the amount of damages sustained as a result of the UDAP violation.[19]

In *Lima v. Deutsche Bank National Trust Co.*,[20] the Hawaii supreme court responded to a certified question posed by the federal district court and held that "a borrower bears the burden of accounting for the effect of a mortgage when establishing the element of harm in the liability case for a wrongful foreclosure or unfair or deceptive acts or practices case."[21] The court reasoned that damages is an element of the plaintiff's case, and that "Plaintiff Borrowers must be able to establish a prima facie case for compensatory damages, factoring in their pre-nonjudicial foreclosure positions, to survive Defendant Banks' motions for summary judgment."[22] The court further held that wrongful foreclosure plaintiffs cannot survive a

---

[19] *Id*. at 1197-98.
[20] 494 P.3d 1190 (2021).
[21] *Id*. at 1193.
[22] *Id*. at 1197.

motion for summary judgment by relying on nominal or punitive damages.[23]

The court did not discuss every issue about the calculation of compensatory damages because the district court's certified question was narrower than that. But the court did reiterate the basic principle that the purpose and goal of compensatory damages is to restore injured parties to their position prior to the wrongful conduct.[24]

### B. *Lima* Applied to This Case

The core allegation of the complaint is that BANA conducted the foreclosure sale of the Tirso's property in an improper manner. There is no genuine dispute that, prior to the foreclosure, the Tirsos owned property that was subject to two mortgages, that they had defaulted under both mortgages, that they were not able to cure those defaults, and that BANA

---

[23] *Id*. at 11980-99.
[24] *Id.* The trustee argues that the compensatory model is insufficient. He seizes upon language in *Delapinia* and *Hungate* that indicate damages in these wrongful foreclosure suits should "deter" this unlawful conduct. In this way, the trustee attempts to collapse the distinct categories of compensatory and punitive damages. While it is true that this action arises from tort and punitive damages – designed to deter future wrongful conduct – may be available, to survive summary judgment, the trustee must prove compensatory damages. These damages focus on restoring the wronged party rather than punishing the wrongful actor or deterring future wrongdoing.

U.S. Bankruptcy Court - Hawaii   #20-90021   Dkt # 58   Filed  02/23/22   Page 7 of 15

was entitled to foreclose in a manner provided by law. This position is unenviable, but it is the position to which the trustee (who stands in the Tirsos' shoes) is entitled to be restored.

The damages that the trustee seeks would put the trustee in a much better position than the Tirsos occupied before the wrongful act. The trustee contends that the damages must include virtually every penny the Tirsos paid to acquire, own, and maintain the property. These amounts would restore the Tirsos, not to the position they occupied before the foreclosure, but to the position they occupied before they even bought the property. Hawai'i law does not support such a windfall.

The trustee relies heavily on *Santago v. Tanaka*, 366 P.3d 612 (Haw. 2016). Tanaka sold a tavern to the Santiagos. The Santiagos made a large down payment and also executed a note and mortgage in favor of Tanaka. Tanaka later conducted a nonjudicial foreclosure of the mortgage, acquired the tavern at the foreclosure sale, and resold the tavern to a third party. The supreme court held that Tanaka was not entitled to foreclose because (1) she made misrepresentations to the Santiagos when she sold the tavern to

them, (2) the mortgage did not include a power of sale authorizing a nonjudicial foreclosure, and (3) the Santiagos had cured their default, and indeed "had made virtually full payment to Tanaka for the Tavern."[25] In other words, in *Santiago*, there never should have been a foreclosure sale at all. It was impossible, however, to undo the sale, because Tanaka had resold the tavern to a third party. In that context, the court held that the Santiagos were entitled to damages equal to their down payment, all of the mortgage payments they had made to Tanaka, the closing charges they paid, and the property taxes they paid after the wrongful foreclosure sale.

This out-of-pocket measure of damages was appropriate in *Santiago* for two reasons. First, the Santiagos should never have lost the property because Tanaka was not entitled to foreclose at all. It was reasonable to compensate the Santiagos for the vendor's wrongful taking of their property by putting them in the position they would have occupied if they had never bought the property in the first place. Second, the court held that Tanaka had made misrepresentations to the Santiagos on which the

---

[25] *Id*. at 158.

Santiagos relied when they bought the tavern. (Mr. Santiago testified that the Santiagos would not have bought the tavern if they had known the truth.) Awarding damages equal to the full amount the Santiagos spent in reliance on the false or misleading statements was appropriate.

This case is different from *Santiago* in a crucial respect.[26] In this case, there is no genuine dispute that BANA was entitled to foreclose and the Tirsos were going to lose their property. The trustee does not deny that they were not making the required payments, or that BANA had a valid and enforceable mortgage. The position to which the Tirsos must be restored is the position they occupied just before the foreclosure; at that point, they were going to lose the property in a foreclosure sale. The wrong that they allegedly suffered was not the occurrence of the foreclosure sale, but rather the manner in which that sale took place.

---

[26] The trustee argues that *Lima* adopts all of the items of damages described in *Santiago* as available "out-of-pocket" losses. But that language is dicta as it was not necessary to answer the certified question. Moreover, the *Lima* court discussed *Santiago* only to explain why it was unnecessary to account for the mortgage debt in that case (because the Santiagos had paid off the mortgage), and not to identify the overall damages calculation for all wrongful foreclosure cases.

In a case like this one, the most natural measure of damages is the difference between the price that the property would have brought in a proper foreclosure sale and the price paid at the defective foreclosure sale. The trustee has offered no evidence of the existence or amount of this value difference.

The trustee also claims that he is entitled to recover damages for loss of use of the property. He asserts that the fair market rental value of the property was at least $1,300.00 per month at the time of foreclosure. He further argues that debtors were ousted from the property four months prior to the property being sold from Freddie Mac to a third-party purchaser in October 2010.[27] The trustee then asserts it would have taken the debtors six additional months from the sale to a third party "to identify, negotiate for, purchase and close on a replacement property." Therefore, the trustee calculates the debtors suffered $13,000.00 in loss of use.

---

[27] The trustee alleges that Freddie Mac cannot be considered a third-party purchaser of the Property because BANA submitted the winning bid at the auction as a "credit bid" on behalf of and for the benefit of Freddie Mac, which held a beneficial interest in the Note and Mortgage. *See* Compl. ¶ 38, ECF No. 1.

Such an award would also put the Tirsos in a better position than they occupied just before the foreclosure sale. At that point, they were facing an imminent foreclosure. Even accepting the allegations of the complaint as true, the foreclosure was held at most a few days early. Under no circumstances did the Tirsos have the right to remain in the property after a valid foreclosure sale, regardless of how long it may have taken them to find a new residence.

The trustee has failed to provide any evidence of any compensable damages. His failure to offer evidence to support an element of his case means that summary judgment in favor of BANA is appropriate.

### C. <u>Time Bar on New Theories of Liability</u>

Even if the trustee could prove compensatory damages and sustain his claims through summary judgment, BANA argues in the alternative that it is at least entitled to summary judgment on the trustee's new theories of liability related to alleged misconduct regarding the notice of acceleration and loss mitigation. I agree with BANA; based on Hawaii law, the statute of limitations has run on these theories of liability.

A federal court hearing claims under state law applies the substantive law of the state, including the state's statute of limitation.[28] "Federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations."[29]

"When interpreting state law, federal courts are bound by decisions of the state's highest court. 'In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"[30]

Under the class action tolling rule, "the commencement of a class action suspends the applicable statute of limitation as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[31] The Hawaii Supreme Court has adopted the class action tolling rule[32] and has also approved the so-called

---

[28] *See Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524, 530 (9th Cir. 2011).
[29] *Id.*
[30] *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995) (quoting *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990)) (internal citations omitted).
[31] *Patrickson v. Dole Food Co.*, 368 P.3d 959, 968 (Haw. 2015) (quoting *Am. Pipe & Const. Co v. Utah*, 414 U.S. 538, 551 (1974)).
[32] *Levi v. Univ. of Hawaii*, 679 P.2d 129, 132 (Haw. 1984).

"cross-jurisdictional tolling," under which the pendency of a class action in federal court tolls the statute of limitations for purposes of a subsequent state court action.[33]

As I have held in similar cases, I find that class action tolling continued until at least March 14, 2019, when the district court dismissed *Degamo*.[34]

BANA argues that *Degamo* tolled the limitations period as to claims that were asserted in that case but not as to other claims. As I previously have held, I predict that the Hawaii Supreme Court would not require exact identity of claims and would instead consider whether the "new claims" would relate back to the class action complaint if they were alleged in an amended pleading in the same action under Haw. R. Civ. P. 15(c).

BANA correctly observes that the complaint in *Degamo* did not include any allegations regarding the notice of acceleration and loss mitigation. The allegedly wrongful conduct asserted in *Degamo* began with

---

[33] *Patrickson*, 368 P.3d at 970.
[34] *See, e.g.*, Order Granting in Part, Denying in Part Defendants' Motion to Dismiss, *Yanagi v. Bank of America, N.A.*, Adversary Proceeding No. 21-90003 (July 28, 2021), ECF No. 23.

the notice of sale; there were no allegation of any prior wrongdoing. The notice of acceleration would have been given before the notice of sale, i.e., before the events that *Degamo* was concerned with. The allegations relating to the notice of acceleration "alter[] the fact situation to such an extent that the subsequent claim arises not out of the original occurrence but instead out of another."[35] None of the allegations in the *Degamo* complaint put BANA on notice that it needed to marshal evidence about events that took place before the foreclosure process began. Therefore, this allegation does not "concern the same evidence, memories, and witnesses as the subject matter of the original class suit."[36]

Therefore, I determine that the claims based on alleged misconduct regarding the notice of acceleration and loss mitigation are time barred.

## IV. CONCLUSION

I will GRANT BANA's Motion for Summary Judgment.

**END OF ORDER**

---

[35] *See Mauian Hotel, Inc. v. Maui Pineapple Co.*, 481 P.2d 310, 314 (Haw. 1971).
[36] *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring).